IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SEAN CHRISTOPHER DESMOND, | ) | Case No. 07-20313-drd-7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| SEAN CHRISTOPHER DESMOND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 07-2019 |
| | ) | |
| AMERICAN EDUCATION SERVICES/WACHOVIA SALLIE MAE SERVICING and EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION

In this adversary proceeding, plaintiff Sean Christopher Desmond ("Debtor") seeks a determination pursuant to 11 U.S.C. § 523(a)(8) that his student loan debts owed to defendant Educational Credit Management Corporation ("ECMC" or "Defendant") should be discharged for the reason that excepting the debts from discharge would impose upon him an undue hardship. This is a core proceeding of which this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and which it may hear and determine pursuant to 28 U.S.C. § 157(a), 157(b)(1) and 157(b)(2)(I). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that the Debtor has

not satisfied his burden of showing that repayment of the debts owed to ECMC would impose an undue hardship upon him and that they should be excepted from discharge under § 523(a)(8).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Debtor seeks a discharge of his liability on three separate student loans now held by ECMC and taken out to finance a Bachelor's Degree he obtained from Missouri Valley College in Computer Information Systems in 2001 and a Master's Degree in Project Management from Keller Graduate School of Management in 2006. The balances due on the two larger loans incurred to finance his undergraduate education are $40,936.98 and $51,234.16 as of July 8, 2007. As of the same date, the balance on the small loan Debtor incurred for financing his graduate education was $4,803.65. Debtor's total student loan indebtedness of which he seeks a discharge in this proceeding is therefore approximately $96,974.79.

Debtor is 28 years old and with his wife of approximately two years, has one child born in December 2005. Debtor also has two children from a previous relationship for whom he pays monthly child support in the amount of $430 and of whom he has joint custody. He expects that sum to increase to $790 based on his increased income noted below. His wife is 32 years old and has a high school equivalent education and is not employed outside the home.

Debtor has made no payments on any of his student loans. Although he sought a deferment, that request was denied as a result of his failure to supply certain required documents with respect to his income.

## II. DISCUSSION

### A. Applicable Legal Principles on Determination of Undue Hardship

Debtor contends that it would be an undue hardship for him to repay the remaining amount

2

due on his student loans. Under § 523(a)(8), certain student loans are nondischargeable unless repayment of the loan would impose an undue hardship on the debtor or his dependents. The burden of establishing undue hardship, by a preponderance of the evidence, is on the debtor. *Ford v. Student Loan Guarantee Found. of Arkansas (In re Ford)*, 269 B.R. 673, 675 (B.A.P. 8th Cir. 2001); *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir. 1981). Unfortunately, the Code contains no definition of the phrase "undue hardship" and interpretation of the concept has been left to the courts. In this Circuit, the applicable standard is the "totality of the circumstances" test. *See Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003); *Andrews*, 661 F.2d at 704; *Fahrer v. Sallie Mae Servicing Corp. (In re Fahrer)*, 308 B.R. 27, 32 (Bankr. W.D. Mo. 2004). In applying this approach, the courts are to consider: (1) the debtor's past, current and reasonably reliable future financial resources; (2) the reasonable, necessary living expenses of the debtor and the debtor's dependents; and (3) other relevant facts and circumstances unique to the particular case. *Long*, 322 F.3d at 544; *Ford*, 269 B.R. at 676. The principal inquiry is to determine whether "the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living"; if so, the indebtedness should not be discharged. *Long*, 322 F.3d at 554. The Court must determine "whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on his student loan without reducing what the debtor and his dependents need to maintain a minimal standard of living." *In re Andresen,* 232 B.R. 127, 139 (B.A.P. 8th Cir. 1999); *accord Long*, 322 F.3d at 554-55.

      There is no precise formula for, or statutory definition of, what constitutes a "minimal standard of living." On one end of the spectrum, it is clearly not enough for a debtor simply to

3

demonstrate that payment of a student loan would require a readjustment of his financial situation or a diminution in lifestyle. *Educ. Credit Mgmt. Corp. v. Stanley (In re Stanley)*, 300 B.R. 813, 817 (N.D. Fla. 2003). A debtor is therefore not entitled to maintain the standard of living enjoyed before the filing of the petition. *See Stanley*, 300 B.R. at 817. On the other hand, it is not necessary that a debtor live in abject poverty in order to demonstrate undue hardship and obtain a discharge of student loans. *See Stanley*, 300 B.R. at 818. A minimal standard of living requires that the debtor have sufficient financial resources to satisfy needs for food, shelter, clothing and medical treatment. *Gill v. Nellnet Loan Services, Inc. (In re Gill)*, 326 B.R. 611, 627 (Bankr. E.D. Va. 2005); *see also Myers v. Fifth Third Bank (In re Myers)*, 280 B.R. 416, 421-422 (Bankr. S.D. Ohio 2002) (minimal standard of living includes the following elements: shelter, utilities, food and personal hygiene, clothing, health insurance or ability to pay medical and dental expenses and recreation).

The "totality of the circumstances" is obviously a very broad test, giving the Court considerable flexibility. As a result, courts in the Eighth Circuit have looked to a number of facts and circumstances to assist them in making this determination including: (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness. *VerMaas v. Student Loans of North Dakota (In re VerMaas)*, 302 B.R. 650, 656-57

(Bankr. D. Neb. 2003); *Morris v. Univ. of Arkansas*, 277 B.R. 910, 914 (Bankr. W.D. Ark. 2002). Applying the totality of the circumstances test to the instant case, the Court examines each factor separately.

### B. Analysis of the Totality of the Circumstances

#### 1. Past, Present and Reasonably Reliable Future Financial Resources

The first factor the Court must consider is Debtor's past, present and reasonably reliable future financial resources. According to his 2005 Federal Income Tax Return, Debtor had adjusted gross income in that year of $19,531.00. From May 2005 to May 2006, he worked for Jump Oil Company in Jefferson City, Missouri, at an annual salary of $25,000.00. In May of 2006, he obtained a position with the State of Missouri as a computer information technologist with an annual salary of $36,400.00. His 2006 Federal Income Tax Return shows adjusted gross income of $33,954.00. At the time of the filing of the petition, he was still employed by the State of Missouri and showed monthly net income on his Schedule of Current Income (Schedule I) of $2,401.02. He has since taken a position with Cerner Corporation and moved to the Kansas City metropolitan area. His annual salary is now $54,600.00. According to his recent pay stubs, his net monthly earnings from Cerner by whom he is paid once every two weeks, are approximately $3,150.00. Debtor testified that Cerner pays bonuses of approximately 2 to 6 percent annually for employees with satisfactory performance. He has not been given any reason to believe his performance has not been satisfactory. If Debtor were to receive a bonus in the middle of that range, he would receive approximately another $182 per month.

While the Debtor's wife is not employed, it is not likely based upon her educational background and employment experience that she would earn an amount significantly in excess of

5

the childcare costs the household would incur if she were to begin to work. Debtor testified that although she worked previously, he believes that she received an hourly wage in the range of $6 - $10 per hour. At the top end of that range, assuming a 2,000 hour work year, she would gross $20,000.00. Debtor presented evidence, which was uncontradicted, that the household's monthly childcare expenses would be approximately $1,500.00 or $18,000.00 annually. Accordingly, it does not appear that having Mrs. Desmond enter the employment market would significantly improve the household's net income.

Although a question was raised about whether the Debtor received tax refunds in the past that might need to be factored into his monthly income, the Court concludes from the evidence that this is not likely to be a source of additional future income for the household. In the year 2005, the Debtor did receive an income tax refund of $2,674.00. The refund amount was only $433.00 in the year 2006. Debtor further testified that he has adjusted his withholding and does not believe that he will receive a tax refund in the current year or that he would be likely to receive one in the future. Accordingly, the Court does not believe any adjustment to the Debtor's expected income is appropriate based upon receipt of tax refunds.

ECMC introduced into evidence the most recent Department of Health and Human Services poverty guidelines and observed that the Debtor's household income is significantly above that level regardless of how one calculates the household size. However, as this Court and others have observed in the past, a debtor need not live in abject poverty in order to obtain a discharge of student loans and the fact that the household income may not be at or below poverty levels does not preclude a finding of undue hardship. *See Fahrer,* 308 B.R. at 33; *In re Powers*, 235 B.R. 894, 900 (Bankr. W.D. Mo. 1999) (listing poverty guidelines as one factor to consider; not controlling); *See also, e.g.,*

*In re Meling*, 263 B.R. 275, 280 (Bankr. N.D. Iowa 2001) (debtor's income just above poverty guidelines, but other factors considered lent to discharge of student loan debt).

## 2. Debtor's Reasonable and Necessary Living Expenses

Debtor has presented several different versions of his monthly living expenses. His original Schedule of Current Expenditures (Schedule J) showed monthly expenses of $2,450.00. In another expense summary apparently provided to ECMC during discovery, Debtor estimated his monthly living expenses at $2,979.46. The change was attributable in part to the change in the Debtor's employment and living circumstances. In another exhibit offered by Debtor at trial, his monthly living expenses are estimated at $3,481.00. The principal difference between this last estimate and previous ones is the inclusion of payments on various debts incurred by his wife for dental work and other medical services, including payments on loans incurred to pay some of those costs.

The required payments on the Debtor's two larger student loans had been a total of $458.83. The required payment on the small loan incurred to pay the expenses of the Debtor's graduate school education is apparently approximately $50.00 per month. Prior to the filing of the bankruptcy petition, Debtor entered into a graduated repayment plan agreement pursuant to which his payments on the two larger loans would aggregate $346.70. Accordingly, under this arrangement, the required monthly payments on all of his student loans would be approximately $400, subject to upward adjustment every two years.

Debtor concedes that certain of his expenses will disappear in the near future because they are installment payments on certain medical debts which will be completely paid within that period. For example, the $25.00 per month the Debtor pays both to a dentist and to Jefferson City Oral & Maxillofacial Surgery will terminate within seven months from the date of the hearing. Debtor will

complete the payment plan on a loan from American General requiring a $99.00 monthly payment in approximately 23 months. The $143.17 per month payment to Prosper for a loan to pay certain medical expenses will expire 33 months from the date of the hearing. Debtor also testified that the sum of $38.47 is deducted from his check each month for enhanced medical costs and screening as a result of the fact that he smokes. Debtor testified, however, that it is his intention to discontinue smoking and eliminate those deductions.

### 3. Other Unique Circumstances

With the adjustments described above, the Debtor's income would approximate the amount of his monthly expenses. While the Debtor may not be in a position to make a substantial payment on his student loans at present, the Court is convinced that his prospect for future earnings based upon his age, educational background, health and employment history are substantial and that these and other factors make discharge of the student loans inappropriate.

The Debtor's age and health are factors which the Court may take into consideration in assessing whether repayment of his student loans would constitute an undue hardship. The Debtor is only 28 years old and has more than three decades of working life remaining. He suffers from no significant health problems and neither do his dependents, with the possible exception of his wife. Accordingly, there is no indication that his physical condition will impose limitations on his ability to earn or place stresses on the household's monthly budget.

Although the Debtor introduced evidence indicating that a treatment plan costing in excess of $10,000 has been prepared for his wife by her dentist, the Court declines to factor any of those expenses into the determination of his ability to pay the student loans for several reasons. First, the Debtor himself in his summary of monthly expenses declined to include any of this amount. Debtor

may have excluded them for the same reasons the Court is reluctant to conclude that any particular amount of the cost of that treatment plan will need to borne by the household. Second, there is no medical testimony describing the need for the treatment of the consequences of not administering it. Third, the exhibit which details the treatment plan contains the dentist's handwritten notations indicating that some of the aspects of the treatment plan are conditional. There is, however, no evidence as to the nature of those conditions or the likelihood that they will occur. Finally, and perhaps most importantly, the Debtor admitted that there is dental insurance available to him through his employment with Cerner of which he is likely to take advantage in the coming months and that some portion of those costs would be defrayed by insurance. Accordingly, the Court has no evidence with which to put a particular figure on the expense side of the ledger for prospective dental treatments. It is unclear which of the described procedures may be required and how much of the costs of those procedures will actually have to be paid by the Debtor.

The Court may also consider Debtor's effort to repay or negotiate repayment of his student loans. The testimony is clear that Debtor has made absolutely no payments on any of his students loans. As noted above, the Debtor only recently completed his Master's Degree. Only one year after he obtained that degree and at about the time the last of his student loans entered into repayment, he sought relief from the Bankruptcy Court and requested that the loans be discharged as an undue hardship. These facts, coupled with Debtor's significant capacity to earn future income, trouble the Court and weigh against the finding of undue hardship.

Many of the factors cited above as relevant in determining the existence of undue hardship counsel this Court against finding that repayment of Debtor's student loans would create undue hardship. As noted above, Debtor is only 28 years old and has decades of earning capacity. Debtor

has a post-graduate degree in computer technology and was able almost immediately to secure a lucrative job in that field of study. Debtor's income has more than doubled in the last two years and is likely to continue to increase. Neither the Debtor nor his dependants has any significant health problems. Debtor has made absolutely no effort to repay any of his student loans and sought relief from the Bankruptcy Court almost immediately after receiving the degree financed by the last of the student loans he incurred. A number of the expenses now burdening his household income will disappear in the near or reasonably near future, freeing up additional income for repayment of these debts.

For all of the above reasons, the Court finds the repayment of the Debtor's student loan indebtedness to ECMC would not impose an undue hardship on him and his dependents and that they are therefore not dischargeable. It is therefore

ORDERED that the indebtedness owed by Debtor to ECMC not be discharged pursuant to 11 U.S.C. § 523(a)(8).

A separate order will be entered in accordance with Bankruptcy Rule 9021.

DATED:      October 4, 2007               /s/ Dennis R. Dow
                                          HONORABLE DENNIS R. DOW
                                          UNITED STATES BANKRUPTCY JUDGE

Copies to:
Sean Christopher Desmond
Larry Bork